STATE ex rel. McMASTER, Plaintiff, v. REEVES, Defendant,
(Payne, et al, Interveners.)

(184 N. W. 1007.)

In Two Parts.

PART I.

(File No. 4980. Opinion filed Ocober 27, 1921.)

1.  Constitutional Law—Attorney General, Common Law Duties of, Professional Capacity Re, Statute as Defining—Duties Confined to Law Matters.

The duties of the Attorney General at common law, as defined

by Sec. 5364, Code 1919, and as universally understood, are such as he may render the state in his professional capacity; and said section, wherein it requires him to appear for, prosecute and defend actions, etc , in which the state or any department thereof shall be a party or interested, to prosecute at request of the Governor, etc., official bonds and contracts in which the state is interested, to consult with, etc., and supervise the several state's attorneys concerning their official duties, to mail copies of certain opinions rendered by him to Executive Accountant, State's Attorneys and County Auditors, to give opinions upon request to Legislature and certain state officers therein specified, to prepare contracts, etc., for use of state on request of certain specified officers, to report to Legislature on any business relating to his official duties, and to prosecute state officers neglecting, etc., to pay into state treasury public funds and under Const., Art. 4, Sec. 13, providing that his powers and duties shall be as prescribed by law, render him a constitutional officer, and his duties, independent of the statute, are those of a law officer; and said section 5364, in so specifying his duties, recognizes the fact that the scope of his duties does not extend beyond law matters.

2.   Same—Attorney General as Member of Securities Commission, Duties of Distinguished From Those of Attorney General— Duties are Administrative—Statute.

Under Sec. 10127, Code 1919, as amended by Sec. 1, Chap. 82, Laws of Second Special Session of 1920, providing that the Securities Commission theretofore created to administer and provided for enforcement of provisions of said chapter, shall continue to consist of Superintendent of Banks, who shall be president thereof, the Attorney Genral, the Rural Credit Commissioner, and one other member to be appointed by Governor, etc., and which Commission is empowered and directed by other sections therein to examine all statements and documents filed in its office by investment companies, etc., to conduct examinations and determine character of stocks, bonds and security contracts and plans of business of such companies, and upon approval thereof to permit sale of stock or other securities, imposes upon the Attorney General as a member of said Commission the duties and responsibilities borne by the other members; and they are not duties connected with the office of Attorney General, but are administrative in character and wholly foreign thereto.

3.   Constitutional Law—Constitutional State Officers, Imposing Separate Duties Upon, With Additional Salary, Legislative Power Re—State v. Roddle, Followed.

It is within province of Legislature to impose upon a constitutional officer duties separate and distinct from those of

his office, and to provide compensation therefor in addition to his salary as such constitutional officer. State v. Roddle, 12 S. D. 438, approved and followed. Burns v. Board of Co. Comrs., 39 S. D. 426, distinguished.

4.    Same—State Officers, Fees and Salaries of—Retaining Emolument, Fee or Perquisite for Official Duties, Statute Forbidding, Subsequent Statute Controlling—Legal Problems of Commission as Non-affecting Commission's Duties.

Chap. 127, "Laws 1901 (now Sec. 6965, Code 1919), making it unlawful for any officer receiving a state salary to keep or retain any money, emolument, fee or perquisite, paid to or received by him for performance of official duty; "or in any manner paid to him as such officer, or by reason of his holding such office," and declaring it the true intent and meaning of said section "that no officer receiving a salary from the state keep or retain any money, emolument, fee or perquisite, paid to him by reason of his holding such office, other than the annual salary payable to such officer as provided by the Constitution," is not controlling in the instant case; since Sec. 1, Chap. 82, Laws Special Session 1921, being the later legislative enactment, supersedes said Chap. 127 and said Sec. 6965; and moreover, the existing statute (Sec. 10127, Code 1919, as amended by Sec. 1, said Chap. 82) prescribe for the Attorney General duties as a member of the Securities Commission not within the scope of his constitutional office as Attorney General, and which laws provide a compensation for their discharge; nor does the fact that said Commission may have legal problems to solve and may require legal advice, affect the general character of its executive duties.

5.    Same—Salary of Attorney General as Member of Securities Commission, Not Additional Compensation Re Constitutional Office, and Non-conflicting With Constitution.

Under said statutes concerning the Securities Commission, the duties of its members are foreign to those of Attorney General, and not germane to his office; and said act awarding him compensation does not award additional compensation for any duty connected with his constitutional office as Attorney General, and is not in conflict with Const., Art. 21, Sec. 2, providing that such officer shall receive an annual salary of $1000, and that certain state officers, including him "shall receive no fee or perquisites whatever for the performance of any duties connected with his office;" and is not in conflict with Art. 4, Sec. 13, providing that the powers and duties of the Attorney General shall be as prescribed by law; that the Court is not at liberty to extend limitations found in said Sec. 2, to duties not connected with this office.

6.    Same—Attorney General's Duties Under Original Statute, Subse-

quent Growth, Importance, of His Duties, Judicial Cognizance
Of—Inadequacy of Salary, Court's Powerlessness Re.

It is a recognized fact, of which judicial cognizance may be
taken, that when in 1889 the office of Attorney General was
created and the compensation fixed at $1000 per annum there
were few duties to be performed; that now with growth and
importance of public business exclusive services of an officer
of highest skill and ability are demanded. And while his com-
pensation is so grossly inadequate that he may be said to serve
the state rather from sense of public duty than for pay, courts
are powerless to correct the situation.

Rice, J., dissenting.

## PART II.

1.  Constitutional Law—Fees and Salaries—Superintendent of Public
    Instruction, Salary of as Executive Officer of State Board of
    Education, Whether an Increase of Constitutional Salary—
    Statutes, Constitution, Construed.

Laws 1917, Sec. 227, being an Act to accept the benefits
of an Act of Congress to provide for promotion of vocational
education and to establish a State Board of Education for that
purpose, formally accepted the provisions of the Federal Act,
and (Sec. 2) created such Board of Education "to consist of
the Superintendent of Public Instruction, the President of the
University of South Dakota, the President of the State College
of Agriculture and Mechanic Arts and four persons appointed
by the Governor two of whom shall be members of the faculty
of a State Normal School, one a superintendent or principal of
a city or town school and one a county superintendent," and
providing that the appointive members thereof shall hold office
for four years, that (Sec. 3) such Board shall hold meetings at
the Capital in July and January, etc., and defining the duties
of the Superintendent of Public Instruction, who "shall be ex-
officio president of the Board and shall furnish all necessary
record books and blanks for its use," and that members of said
State Board of Education shall receive no salary for their ser-
vices thereon, but that they shall be reimbursed for actual
expenses incurred in performance of their duties; said chapter
appearing as Secs. 7406 to 7410, inclusive, Code 1919. Sec.
7409 as amended by Chap. 184, Laws 1919, further defined
duties of said Board, and further provided that said Board,
"shall have authority to appoint upon the recommendation of
the Superintendent of Public Instruction such officers and
assistants as he may deem necessary to properly administer
the Federal Act and this Act * * *," and that said Board shall
authorize the Superintendent of Public Instruction to certify
to State Auditor the amount appropriated as State and Federal
Aid to each school approved under the provisions of the present

Act. Secs. 7409 and 7410 were further amended by Laws 1921, Chap. 215, and provided that the executive officer of the State Board of Education shall receive a salary of $600 a year. **Held,** that said Chap. 215 is not in contravention of Const., Art. 21, Sec. 2, providing that the Superintendent of Public Instruction shall receive an annual salary of $1800 and that he shall receive no fees or perquisites for performance of any duties connected with his office, and that it shall not be competent for the Legislature to increase the salary of the officers therein named including the Superintendent of Public Instruction; nor of Art. 12, Sec. 3, providing that the compensation of any public officer shall not be increased or diminished during the term of office. The question involved is: Was the Superintendent of Public Instruction when acting as executive officer of the State Board of Education acting as Superintendent of Public Instruction and discharging the duties imposed upon him as such officer? and held, further, that the Legislature in plain terms has required him as Superintendent of Public Instruction to act as such executive officer; this in view of said legislative provision, and of Const., Art. 4, Sec. 13, providing that the powers and duties of the Superintendent of of Public Instruction shall be as prescribed by law.

2. Same—State Board of Education, Whether Creation of Created New Office, Immateriality of Question—Legislative Power Defined—Non-germane Duties Not Required.

As to whether the Legislature, in enacting said statutes, created a new office when it created the State Board of Education, is unimportant; the Legislature having full power to define and fix the duties of the Superintendent of Public Instruction, with an implied inhibition against requiring him to perform duties not germane to his office; and if the duties so imposed pertain to and are in furtherance of public education and instruction they are germane to his office, and he as Superintendent of Public Instruction is impliedly obligated to give the state the beenfit of his services in discharge of the duties imposed.

3. Public Instruction—Legislative Discretion Re Classes Of—Vocational Education, Instruction Re, Legislative Power Re—Payment for Services, Source Of, Immateriality—Evasion of Constitution, How Impliedly Evaded.

The kinds or classes of public instruction the state will provide rests wholly with Legislature; and if it deems it advisable that state shall give instruction as to vocational occupations, it has power to do so and may require from Superintendent of Public Instruction his assistance or superintendence; it is no concern of his as to source from which funds for carrying on vocational education are derived; and so long as such

instruction is provided for the public benefit it is public instruction and germane to duties of Superintendent of Public Instruction; that if by device of creating a Commission and making constitutional officer a member thereof and imposing upon the Commission duties germane to the constitutional officer, Legislature can provide a salary in addition to that provided by Constitution, it could take each part of statute defining his duties, create a Commission, make him an ex-officio officer thereof, give the office a new title, pay him a salary, and thus annul the constitutional provision herein involved.

4.   Constitutional Law—Grant of Power, What Carried by Implication—Increase of Salary, Prohibition Against, What Implications Involved—Consent of Constitutional Provision, Nonjudicial Question.

It is a fundamental principle of law that granting of a power carries with it by implication the right to do everything necessary to exercise of the power granted, and a prohibition carries with it implications as broad as those going with granting of power; and Const., Art. 21, Sec. 2, providing that Superintendent of Public Instruction shall receive an annual salary of $1800 and that he shall receive no fees or perquisites whatever for performance of any duties connected with his office, and that it shall not be competent for Legislature to increase the salary of said and other officers, by implication prohibits Legislature from doing so. Held, further, that the wisdom of the constitutional provision involved, and the adequacy or otherwise of the salary, are not before the Court.

Original proceedings by the State of South Dakota, on the relation of William H. McMaster, Governor, against Jay Reeves, as Auditor of the State of South Dakota; Byron S. Payne, as Attorney General, and Fred L. Shaw, as Superintendent of Public Instruction, intervening; praying for a writ of prohibition against the defendant Jay Reeves, as Auditor aforesaid, prohibiting and restraining him from issuing warrants on the state and on the State Treasurer (as to the cause of action in Part I set forth) to Byron S. Payne, Attorney General, in payment of his salary as a member of the State Securities Commission; and (as to the cause of action in Part II set forth) to Fred L. Shaw, Superintendent of Public Instruction in payment of his salary as executive officer of the State Board of Education. As to the cause of action in Part I set forth, writ denied; as to the cause of action in Part II set forth, writ ordered issued.

["The Supreme Court being of the opinion that all of its judges and all of the judges of the Circuit Court are disqualified

to act herein and having entered of record an Order reciting the fact and selecting from the 'Attorneys of record of said Court the following persons to act in their place, to-wit: Robert ·C. Hayes of Deadwood, T. H. Null of Huron, A. H. Orvis of Yankton, Lewis W. Bicknell of Webster and Geo. Rice of Flandreau; and they having qualified as provided by law and organized as a Court, Robert ·C. Hayes, presiding, proceeded to hear and determine. this. proceeding."]

*Charles E. DeLand,* and *A. L. Wyman,* for Plaintiff.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for the Defendant and Interveners.

## PART ONE.

(1) Under point one of the opinion, and to proposition that the common law does not apply to this case as regards duties of Attorney General, Plaintiff cited: Sec. 10656, Code 1919; Burnett v. Myers, 42 S. D. 233, 173 N. W. 730.

Defendant and Intervenors cited, to proposition that his duties are those prescribed at common law: Love v. Baehr, 47 Cal. 364.

(2) To point two, Plaintiff cited: Sec. 5364, Code 1919; Sec. 6965, Code; Chap. 319, Laws 1913, Sec. 1, as amended by Chap. 275, Laws 1915; Sec. 10127, Code 1919; Chap. 310, Laws 1919, Sec. 1; State v. Roddle, 12 S. D. 433; Chap. 82, Laws Second Special Sess. 16th Leg., 1920; Burns v. Board of Co. Comrs., 39 S. D. 426.

Defendant and Intervenors cited: Said statutes and the decisions cited by them to point 3, infra.

(3) Under point three, defendant and Interveners cited: Love v. Baehr, 47 Cal. 364; Melone v. State, 51 Cal. 549; Dyche v. Davis (Kas.) 142 Pac. 266; U. S. v. Saunders, 120 U. S. 126, 30 L. Ed. 594; State ex rel. Howell v. La Grave (Nev.) 48 Pac. 193; State ex rel. Chatterton v. Grant (Wyo.) 73 Pac. 470; State ex rel. v. Walker (Mo.) 10 S. W. 473; Olcott v. Hoff (Oreg.) 181 Pac. 466; State v. Roddle, 12 S. D. 433; Crossman v. Nightingill, 1 Nev. 323; Burns v. Board of Co. Comrs., 39 S. D. 426; Secs. 862-3 of Mechem on Pub. Off.; State ex rel. Seattle v. Carson (Wash.) 33 Pac. 428; Eldredge v. Salt Lake County, (Utah) 106 Pac. 939; Slayton v. Rogers, 107 S. W. 696 (Ky.); Macon County v. Abercrombie (Ala.), 62 So. 449.

(4) Under point four, Plaintiff cited: Sec. 6965, Code 1919; Chap. 127, Laws 1901; State v. Roddle, 12 S. D. 433; Burns v. Board of Co. Comrs., 39 S. D. 426.

## PART TWO.

(1) To point one of the opinion, Plaintiff cited: Chap. 227, Laws 1917; Secs. 7408, 7409, 7410, Code 1919, as amended by Chap. 184, Laws 1919; Chap. 215, Laws 1921; State v. Roddle, 12 S. D. 433; Sec. 24, Chap. 21, Laws 1921.

Defendant and Interveners cited the statutes, and Mechem on Pub. Officers, Secs. 862-3; Ann. Cas. 1918E, page 1062; State ex rel. Seattle v. Carson (Wash.) 33 Pac. 428; State v. Roddle, 12 S. D. 433; Act Cong. of Feb. 23, 1917, Chap. 114; Act. Cong. of June 2, 1920, Ch. 219, 41 Stat. L. 735; Slayton v. Rogers (Ky.) 107 S. W. 696.

## PART I.

HAYES, P. J. (after stating the facts as above). The relator petitions the court for a writ of prohibition to restrain the state Auditor from issuing warrants to the Attorney General in payment of his salary of $1,200 per annum as a member of the State Securities Commission. Defendant demurs to the petition, and the issue raised relates to the validity of section No. 10127 of the Revised Code of 1919, as amended by section 1 of chapter 82 of the Laws of the Second Special Session of 1920. The amendment is as follows:

"The Securities Commission, heretofore created, whose duty it shall be to administer and provide for the enforcement of the provisions of this chapter, shall continue to consist of the Superintendent of Banks who shall be president thereof, the Attorney General, the Rural Credit Commissioner, all of whom shall be members of such commission during their terms of office and one other member to be appointed by the Governor and who shall serve for a term of three (3) years, unless sooner removed by the Governor. * * * The other members of said Commission shall be entitled to receive for their services, a salary of $1,200.00 per year, payable monthly as the salaries of other state officers are paid: Provided that any member of this Commission who receives $4,000.00 per annum or more as salary or compensation for his services in connection with any other state office, shall not

be entitled to receive any additional compensation for services performed as a member of the State Securities Commission."

It is contended by the relator that ·this statute, in providing payment of salary to the Attorney General for services as a member of the State Securities Commission, violates that part of section 2, art. 21, of the state Constitution wherein it is. declared that the Attorney General shall receive an annual salary of $1,000, and that certain state officers, including the Attorney General, "shall receive no fees or perquisites whatever for the performance of any duties connected with their office."

[1]    Sec. 13, art. 4, of the Constitution provides that the powers and duties of the Attorney General shall be as prescribed by law.    The Legislature is prohibited by said section 2, Art. 21, of the Constitution from paying to the Attorney General additional compensation for services which 'he may perform as the law officer of the state.

The legislative enactment in question must be sustained unless clearly in conflict with the constitutional provisions.    The duties of the Attorney General at common law, as defined by section 5364 of the Revised Code of 1919, and as universally understood are those which he may render the state in his professional capacity.

The section of ·the Code referred to requires him to appear for the state and prosecute and defend all actions and proceedings, civil or criminal, in the Supreme Court, in which the state shall be interested or a party; to attend to all civil cases remanded by the Supreme Court to the circuit court, in which the state shall be a party or interested; to prosecute, at the request of the Governor, State Auditor, or State Treasurer any official bond or contract in which the state is interested, upon a breach thereof, and prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with either of their departments; to consult with, advise, and exercise supervision over the several state's attorneys of the state in matters pertaining to the duties of their offices; to mail copies of certain opinions rendered by him to the executive accountant, state's attorneys, and county auditors; to give opinions upon questions of law, when requested, by the Legislature, or either branch thereof, or by the Governor, Auditor, Treasurer, or Superintendent of Public Instruction; to

prepare contracts, forms, and other writings, which may be wanted for use of the state on request of the State Auditor, Treasurer, Superintendent of Public Instruction, or Commissioner of School and Public Lands; to report to the Legislature, or either branch thereof, upon any business relating to the duties of his office; and to prosecute state officers who neglect or refuse to pay into the state treasury public funds.

The Attorney General is a constitutional officer, the title designates him as the attorney for the state, and his duties, independent of the statute, are those of a law officer. This section of the Code in its specific enumeration of the functions of his office, recognizes the fact that the scope of his duties does not extend beyond law matters.

[2]    The law imposes upon the Attorney General as a member of the Securities Commission the duties and responsibilities borne by the other members; that is, by the Superintendent of Banks and the Rural Credit Commissioner. The Securities Commission examines all statements and documents filed in its office by investment companies, conducts examinations, determines the character of stocks, bonds, and securities, contracts and plans of business of such companies, and on approval thereof may permit sales of stocks or other securities. These are not duties connected with the office of Attorney General, but are of an administrative character, and wholly foreign thereto.

[3]    It is within the province of the Legislature to impose upon a constitutional officer duties separate and distinct from those of his office, and to provide compensation therefor in addition to his salary as a constitutional officer. In State v. Roddle, 12 S. D. 433, 81 N. W. 980, the Supreme Court of South Dakota has had occasion carefully to consider this question. In that case the Legislature had imposed upon the Secretary of State certain duties as a member of the brand and mark committee, and provided compensation therefor. As he was in receipt of an annual salary of $1,800, it was argued that this additional compensation constituted a violation of paragraph 2, art. 21, forbidding state officers from receiving any fees or perquisites for the performance of duties connected with their offices. The court said:

"We are clearly of the opinion that it was within the province of the Legislature to provide for a new officer to perform

such duties, and the question arises whether in this instance it intended to do so. The language of the act is plain, its meaning is unmistakable, and there can be no doubt that the Legislature intended the person holding the office of Secretary of State to retain 20 per cent. of the brand fees as compensation for his services as a member of the brand and mark committee. Such act cannot be construed as adding new duties to the office of Secretary of State, because such construction would impute an intention on the part of the Legislature to violate the Constitution."

This decision is reaffirmed in Burns v. Board of County Commisioners, 39 S. D. 426, 164 N. W. 1028. In this case the Supreme Court held that the constitutional provision affecting the salary of a county judge (section 30 of article 5) that he should receive no "compensation, perquisite or emoluments, for or on account of his office in any form whatever, except such salary," precluded retention of fees for services as a member of the county board of insanity. The constitutional provision considered in the Roddle Case (section 2, art. 21) forbade additional compensation to state officers for the performance of any duties connected with their office. The distinction in the constitutional provisions was recognized in the following language:

"There is a recognizable difference in meaning between fees 'for the performance of any duties connected with their offices,' as construed in the Roddle Case, and fees or compensation 'for or on account of his office.' The former prohibits extra compensation for the duties of the office; the latter prohibits extra compensation on account of, because of, or by reason of the office. The latter includes the former and prohibits extra compensation, not only for the duties of the office, but also extra compensation by reason of the office itself."

In Love v. Baehr, 47 Cal. 364, it was held that, although the Constitution was wholly silent with respect to the duties to be performed by the Attorney General, and contained no expressed limitation on the part of the Legislature as to the nature of the duties it might impose upon him, yet a limitation on this power was necessarily implied from the nature of that office; and further, that the Legislature had no power to compel the Attorney General to perform the duties of a member of the Board of Examiners to examine and approve or reject claims against the

state; but if such duties were imposed upon him by law, and he performed them, the Legislature might compensate him for this unofficial service by paying him a salary in addition to that which he received as Attorney General, even if the law allowing him such salary was passed during the term of office. In California the constitutional provision was that during the term of office the compensation of the Attorney General should not be increased or diminished, and that he should receive no fees for the performance of his official duties. The court said, in this California case, relative to the powers of the Legislature to impose duties upon the Attorney General not within the scope of his office:

"Some of these services [as member of the Board of Examiners] have not the slightest relation, even upon most liberal construction, to the duties of an Attorney General, as such duties were generally understood at the adoption of the state Constitution, as they were doubtless understood by the framers of that instrument. The business of counting money in the treasury, examining books of account, requiring the skill of an expert accountant rather than the professional learning of a lawyer, and the investment of public money in bonds, is wholly foreign to the duties of an attorney, and is no more cognate to them than the management of a state prison or lunatic asylum. The Legislature has no more power to compel the Attorney General to perform such service as a part of the duties of his office than it has to compel the Superintendent of Public Instruction to take charge of the state prison, or to perform the duties of State Gauger. The Attorney General is, therefore, under no obligation to perform such services, and he may decline to perform them without any breach of his official duty as Attorney General. If, however, he voluntarily performs them, he does not thereby enlarge the scope of his official duties as a constitutional officer. By no compact between him and the Legislature can his official duties as Attorney General be extended beyond the limits contemplated by the Constitution."

In Crosman v. Nightingill, 1 Nev. 323, the reasons for holding that a constitutional provision similar to that contained in paragraph 2, art. 21, of our State Constitution does not prohibit a constitutional officer from receiving compensation for performance of duties of a separate office, are distinctly set forth, to-wit:

"The constitutional restriction imposed by section 9, art. 15,

and section 33, Art. 4, is doubtless intended only to prevent the increase of salary or compensation of officers as such officers, or for duties naturally belonging to their positions, and can scarcely be extended to prevent the allowance of a compensation to officers upon whom duties or responsibilities in no wise connected with their offices are imposed. * * * It would be putting a construction too restricted upon the constitutional limitation to hold that the provision which prohibits the increase of salary or compensation would prevent the holding of two offices by the same person, or the receipt of the salary of both by the same individual. We think the limitation in article 15, § 9, and article 4, § 33, should be confined to the increase of salary or compensation for the discharge of duties naturally belonging to a certain office, and should not prohibit compensation for the performance of other and independent duties in no wise belonging to it."

In United States v. Saunders, 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594, it was held, referring to certain statutes precluding additional compensation for the performance of official duties:

"This legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his department, or in any other mode, added to or connected with the regular duties of the place which he holds; but that they have no application to the case of two distinct offices, places, or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time. In the latter case, he is in the eye of the law two officers, or holds two places or appointments, the functions of which are separate and distinct, and, according to all the decisions, he is in such case entitled to recover the two compensations. In the former case, he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it is so provided by special legislation."

In State ex rel. Chatterton v. Grant, 12 Wyo. 1, 14, 73 Pac.

470, 2 Ann. Cas. 382, it was held that the offices of Governor and Secretary of State were not incompatible, and that on the death of the Governor during his term of office a vacancy existed in such office to be filled by the Secretary of State, who was entitled to receive the salaries of both offices. In this state the constitutional provision fixed the salary of the Secretary of State at $2,000, and prescribed that it should not be increased during the period for which he was elected. These rulings are further supported by Melone v. State, 51 Cal. 549; State ex rel. Seattle v. Carson, 6 Wash. 250, 33 Pac. 428; State v. Clausen, 111 Wash. 254, 190 Pac. 329; Detroit v. Redfield, 19 Mich. 376; State v. Vasaly, 98 Minn. 46, 107 N. W. 818; Dyche v. Davis, 92 Kan. 971, 142 Pac. 264; Howell v. La Grave, 23 Nev. 373, 48 Pac. 674; State ex rel. Walker, 97 Mo. 162, 10 S. W. 473.

[4]    It is ably contended by counsel for plaintiff:

First.    That chapter 127 of the Laws of 1901 (now section 6965 of the Code of 1919), making it unlawful "for any officer receiving a salary from the state to keep or retain any money, emolument, fee or perquisite, paid to or received by him for the performance of any duty or duties connected with his office, or in any manner paid to him as such officer or by reason of his holding such office, it being the true intent and meaning of this section that no officer receiving a salary from the state shall keep or retain any money, emolument, fee or perquisite paid to him by reason of his holding such office, other than the annual salary payable to such officer as provided by the Constitution," is of controlling force here.

Second.    That chapter 319 of the Laws of 1913, creating the Securities Commission, consisting of certain constitutional officers, and providing for their service without additional compensation, demonstrates a legislative intent merely to add to the duties of those officers that of serving upon the Securities Commission, and not to create a new office.

Third.    That the Attorney General's duties as a member of the Securities Commission are germane to his office, for the reason that many law questions must necessarily come before that commission for solution.

It is sufficient to say that section 1 of chapter 82 of the Laws of the Special Session of 1920 is the later legislative enactment, 

40—Vol. 44, S. D.

and supersedes section 6965 of the Code; that the existing statutes prescribe for the Attorney General duties as a member of the Securities Commission not within the scope of his constitutional office, and lawfuly provide a compensation for their discharge; that the fact that the Securities Commission may have legal problems to solve—may require legal advice—in no manner affects the general character of its executive duties.

[5] We are of the opinion that the duties of the members of the Securities Commission are foreign to those of the Attorney General, not germane to his office; that the act in question awards compensation for duties which are not connected with the office of Attorney General, and, as it does not award him additional compensation for any duty connected with his constitutional office, it is not in conflict with the constitutional provision limiting his recompense to $1,000 for services as law officer of the state. We are not at liberty to extend limitations found in section 2, Art. 21, to duties not connected with this office.

[6] It is a recognized fact, of which judicial cognizance may be taken, that when in 1889 the office of Attorney General was created, and the compensation fixed at $1,000 per annum, there were few duties to be performed; that now, with the growth and importance of public business, exclusive services of an officer of the highest skill and ability are demanded. The compensation is so grossly inadequate that it may truthfully be said that this officer serves the state not for pay, but out of a sense of public duty. This situation, however, is one which the courts are powerless to correct.

We must conclude from a careful examination of the statutory and constitutional provisions and the authorities that the Legislature, in creating the Securities Commission, imposed upon the Attorney General duties not germane to his office, and that, when it granted compensation, in addition to his constitutional salary, it granted it for services which he was not bound, as Attorney General, to perform, and for which he is not prohibited from receiving compensation.

The petition of the plaintiff for a writ of prohibition restraining the issue of salary warrants to the Attorney General is denied.

RICE, J. (dissenting). I concur in much of what is said by the Presiding Judge in the majority opinion as to the power of

the Legislature to create a new office and impose the duties thereof upon one or more of the constitutional officers, and, if the duties required in the new office are not germane to the duties of the constitutional office, the Legislature may lawfully pay for the services rendered in the new office (State. v. Roddle, 12 S. D. 433, 81 N. W. 980); but I do not concur in the conclusion of the majority of the court that the Attorney General, when acting as a member of the Securities Commission, was filling any other office than that of Attorney General. I do not concur in the conclusion that the duties imposed upon the Attorney General as a member of the Securities Commission are not germane to the office of Attorney General. The statute provides that the commission shall consist of certain state officers, including the Attorney General, and creates one new office, that of secretary of the Commission, and provides that he shall receive a salary of $3,600 per year; that he shall take an oath of office and file a bond. There is no provision in the law for the other members of the Commission filing a bond or taking an oath of office. The fact that no provision is made for the giving of a bond by any of the officers excepting the secretary indicates that the Legislature did not intend to create any office except that of secretary. Whether there was or was not a new office created is not very important. The real question is: Were the duties imposed upon the Attorney General germane to his office? It was argued in behalf of the Attorney General that by implication the Legislature was prohibited from imposing duties upon the Attorney General other than those required under the common law.

"It is a maxim with the courts that statutes in derogation of the common law shall be construed strictly—a maxim which we fear is sometimes perverted to the overthrow of the legislative intent; but there can seldom be either propriety or safety in applying this maxim to Constitutions." Cooley's Con. Lim. (5th Ed.) p. 74.

The duties of "the Attorney General shall be as prescribed by law." Section 13, art. 4, Constitution.

When the framers of the Constitution provided for an Attorney General, it was undoubtedly intended that he should be the law officer of the state; that it could ask and require from him any service reasonably within the limits of those usually rendered

by an attorney at law, or such service as an attorney usually accepts from a private employer. To properly understand and construe the statute providing for a State Securities Commisison, and defining its duties, it is necessary to understand the conditions which brought it forth. Such statutes have been enacted in many states. They are usually known as "Blue Sky Laws." Great frauds were being perpetrated upon the public by the organization of numerous corporations with high-sounding names and beautifully engraved certificates of stock and bonds, purporting to be engaged in all kinds of commercial and industrial enterprises, with misleading and false statements as to assets, earnings, etc. It was for the purpose of preventing the sale of such fraudulent certificates, bonds, etc., that the statute under consideration was enacted. The purpose of the law is shown by the title to the first statute enacted:

"An act entitled, 'An act to prevent fraud in the sale and disposition of stocks, bonds or other securities sold or offered for sale within the state of South Dakota, providing for the enforcement thereof, and creating a State Securities Commission." Chapter 275, Laws 1915.

The last statute enacted in the emergency clause recites:

"Whereas a large number of enterprises are being organized at the present time and whereas the present law is inadequate and whereas this statute is necessary for the immediate preservation of the safety and support of the state government and its existing institutions, an emergency is hereby declared to exist, and this act shall take effect and be in force from and after the date of its passage and approval." Chapter 82, Second Special Session Laws, 1920.

A bank or trust company that had been defrauded by purchasing the class of paper regulated by the statute and which wished redress would at once turn the matter over to an attorney for investigation. If such bank or trust company was about to make investments, and its suspicions were aroused as to the fraudulent character of the paper offered, it would undoubtedly at once turn the matter over to its attorney for investigation. It is a matter of general knowledge that within recent years, when there was great scandal as to the fraudulent management of the three greatest insurance companies in the nation, the man selected

to investigate the matter was one of the nation's greatest attorneys whose name it is not necessary to mention. The result shows the wisdom of his selection. One of the present Justices of the Supreme Court of the United States performed his most notable service as an attorney at law in the investigation of the internal affairs and management of corporations, to the great advantage of the public, as well as to the stockholders and creditors of the corporations. A large percentage of the business transacted by attorneys at the present time is of a class that was unknown to attorneys in the days of Daniel Webster and Rufus Choate. Lawyers are becoming less the advocate and more the counselor. They are using less of their time to get their clients out of trouble, and more to keep them from getting into trouble. They are spending less time trying cases in court, and more time in keeping their clients from having cases in court to be tried. If the state can demand the services of the Attorney General in prosecution of persons for perpetrating frauds within the state, it may require his services to prevent the perpetration of frauds within the state, whether such frauds consist in obtaining money by false pretense, whether by bank checks, drafts, forged instruments, counterfeit money, or by the sale of beautifully engraved certificates of stock in corporations with captivating names.

The Legislature is to be commended for the wisdom shown in selecting appropriate state officers to act as the Securities Commission. There is no part of the duties of that Commission that is not appropriate to some one of the officers selected. It will not be presumed that the Legislature intended that the Attorney General should act as accountant or the accountant to act as an attorney. The statute does not provide what part of the duties of the Commission is to be performed by the Attorney General. It is to be presumed that the Legislature intended that each member of the commission should perform the duties appropriate to his office. If the entire duties of the Commission were to be performed by or under the supervision of one person, who would be better qualified than an attorney at law? The state had a right to require the Attorney General to act upon the Securities Commission as a part of his duties. It is not probable that the Legislature intended or expected the Attorney General to devote any more of his time to the state than he did prior to the enactment

of the statute creating the Securities Commission. It is a matter of general knowledge that at no time since the adoption of the Constitution could the Attorney General personally do all the work of his office; that for many years he could not do more than give the office general supervision, and give his personal attention to some of the most important business; that the first state Legislature provided an assistant for him. If the salary provided by the Constitution for constitutional officers can be increased by the device of forming a commission, imposing upon it part of the duties of a constitutional officer, making such officer an ex officio member of the commission and paying him an additional salary, the constitutional provision fixing and limiting the salary of constitutional officers is less than a rope of sand. It is a mere myth.

Suppose the Legislature should create a commission composed of the Attorney General, the Secretary of State, and the State Auditor; impose upon that Commission a part of the legitimate duties of each of the officers, or even all of the duties of each of the officers; each could say that he was entitled to additional pay because some of the duties of the Commission did not pertain to his particular office. To establish such a precedent is dangerous in the extreme. It is offering a direct reward for the creation of new commissions with overlapping and conflicting powers and duties that will lead to complications, confusion, and shifting of responsibility, and may cause serious losses and expensive litigation as to the liability on official bonds. The court should not establish such a precedent unless the language of Constitution and statute is such that no other reasonable construction can be given.

A peremptory writ of prohibition should issue.

## PART II.

RICE, J. The question presented by this proceeding is the right of Fred L. Shaw, the Superintendent of Public Instruction, to receive $600 per year as executive officer of the State Board of Education.

The state contends that the statute authorizing the payment is unconstitutional, and an attempt to increase the salary of the Superintendent of Public Instruction contrary to the constitutional inhibitions. It is contended on behalf of the defndant that the

Legislature, by the statutes hereinafter referred to, created a new office to be filled ex officio by the Superintendent of Public Instruction, and that the duties of the new office are not germane to the office of the Superintendent of Public Instruction. Chapter 227, Laws 1917, is entitled:

"An act to accept the benefits of an act passed by the Senate and House of Representatives of the United States of America in Congress assembled to provide for the promotion of vocational education and to establish a State Board of Education for that purpose."

Section 1 is a formal acceptance of the provisions made by Congress for the promotion of vocational education. Section 2 is in part as follows:

"To this end there is hereby created the State Board of Education to consist of the Superintendent of Public Instruction, the president of the University of South Dakota, the president of the State College of Agriculture and Mechanic Arts and four persons appointed by the Governor, two of whom shall be members of the faculty of a state normal school, one a superintendent or principal of a city or town school and one a county superintendent."

It also provides that the appointed members of the Board shall hold their office for four years. Section 3 provides that the Board shall hold meetings at the capitol in July and January, and such special meetings as shall be deemed necessary. It defines the duties of the Superintendent of Public Instruction.

"The Superintendent of Public Instruction shall be ex officio president of the Board and shall furnish all necessary record books and blanks for its use."

It also provides that the members of the State Board of Education shall receive no salary for their services thereon, but that they shall be reimbursed for the actual expenses incurred in the performance of their duties.

Section 4 further defines the duty of the Board. Section 5 designates the State Treasurer as the custodian of the funds paid to the state from the federal appropriation. Chapter 227 is carried into the Revised Code of 1919 without material change, and appears as sections 7406 to 7410, inclusive.

The Legislature in 1919, by chapter 184, amended section 7409 by further defining the duties of the Board, and by implica-

tion further defines the duty of the Superintendent of Public Instruction as follows:

"The State Board of Education shall have authority to appoint upon the recommendation of the Superintendent of Public Instruction such officers and assistants as he may deem necessary to properly administer the federal act and this act of the state of South Dakota. * * * The State Board of Education shall, on or before the last Tuesday in July authorize the Superintendent of Public Instruction to certify to the State Auditor the amount apportioned as state and federal aid to each school approved under the provisions of this act."

Sections 7409 and 7410 were further amended by the Legislature in 1921, chapter 215, and provide:

"That the executive officer of the State Board of Education shall receive a salary of $600 a year, * * * payable in twelve monthly installments."

It is contended on behalf of plaintiff that the last statute quoted contravenes the following provision of the Constitution:

"The Superintendent of Public Instruction shall receive an annual salary of $1,800.00." Section 2, art. 21, Constitution.

"He shall receive no fees or perquisites whatever for the performance of any duties connected with his office and it shall not be competent for the Legislature to increase the salaries of the officers named including the Superintendent of Public Instruction." Section 2, art. 21.

"Nor shall the compensation of any public officer be increased or diminished during his term of office." Section 3, art. 12.

[1] The real question involved in this case is: Was the Superintendent of Public Instruction, when acting as executive officer of the State Board of Education, acting as Superintendent of Public Instruction and discharging the duties imposed upon him as such officer? In plain terms the Legislature has required him, as Superintendent of Public Instruction, to act as such executive officer.

"The powers and duties of the * * * Superintendent of Public Instruction * * * shall be as prescribed by law." Section 13, art. 4, Constitution.

[2] As to whether the Legislature created a new office when it created the State Board of Education is not important. The

Legislature has full power to define and fix his duties, with an implied inhibition against requiring him to perform duties that are not germane to his office. If the duties imposed pertain to and are in furtherance of public education and instruction, they are germane to his office, and the Superintendent of Public Instruction is under an implied obligation to give the state the benefit of his services in discharge of the duty imposed.

[3] The kinds or class of public instruction which the state will provide rests wholly with the Legislature. If it is deemed advisable by the lawmaking power that the state give instruction as to vocational occupations, it has full power to do so, and it can require from the Superintendent of Public Instruction his assistance or superintendence of such instruction. It is no concern of his as to the source from which the funds for carrying on vocational education are derived—whether from the sale of school lands, the collection of fines and penalties, by direct taxation, voluntary donation, or otherwise—so long as the instruction is provided for by the state for the benefit of the public, it is public instruction, and germane to the duties of the Superintendent of Public Instruction. If by the device of creating a commission and making a constitutional officer a member thereof, and imposing upon the commission duties germane to the constitutional officer, the Legislature can provide a salary in addition to that provided by the Constitution, it can take each part of the statute defining the duties of the Superintendent of Public Instruction, create a commisison, make the Superintendent an ex officio officer thereof, give the office a new title, pay him a salary, and annul the constitutional provisions heretofore quoted. The Superintendent of Public Instruction as an ex officio officer would be rendering the same service to the state that he formerly performed as Superintendent of Public Instruction. The only actual change would be the title of the office and the salary paid.

[4] It is a fundamental principle of law that the granting of a power carries with it by implication the right to do all things necessary to the exercise of the power granted. A prohibition carries with it implications as broad as those that go with the granting of a power. The Constitution prohibited the Legislature from increasing the salary of the Superintendent of Public Instruction not only directly, but by implication; from doing so in

any manner whatever. The wisdom of the constitutional provisions, the adequacy or inadequacy of the salary, are not before the court.

A peremptory writ of prohibition will issue.