CLEM, Appellant v. CITY OF YANKTON, Respondent

(160 N.W.2d 125)

(File No. 10511. Opinion filed July 16, 1968)

**Bogue & Weeks,** by **Everett A. Bogue,** Vermillion, for plaintiff and appellant.

**Goetz, Hirsch & Haar, James T. Goetz,** City Atty., and **Robert W. Hirsch,** Yankton, for defendant and respondent.

RENTTO, Judge.

The plaintiff a resident and taxpayer of the defendant city in this proceeding seeks a judgment declaring that Ch. 148, Laws of 1964, which authorizes our cities to issue revenue bonds to acquire, equip and rent facilities to promote the economic welfare of our state, is unconstitutional. He further requests that the action of the city taken thereunder relative to a contract with Morgen Manufacturing Company be declared illegal and its officers and agents enjoined from doing anything more therewith until this litigation is determined.

The facts on which the cause was submitted to the trial court were stipulated. The court concluded that the act was constitutional and that the actions taken by the city thereunder concerning its contract with Morgen were valid. A judgment to this effect was entered dismissing plaintiff's complaint upon its merits. From the judgment plaintiff appeals.

The act under attack is as follows:

"Section 1. Purpose of Act. It is hereby declared that the purpose of this act shall be to promote, stimulate and develop the general economic welfare and prosperity of the State of South Dakota through the promotion and advancement of industrial, commercial, agricultural, natural resources and recreational development in the state; to encourage and assist in the location of new business and industry in this state and the expansion of existing business development; and to promote the economic stability of the state by providing greater employment opportunities and diversification of industry thus promoting the general welfare of the citizens of this state by authorizing all municipalities of the state to issue revenue bonds, the proceeds of which shall be used only to purchase or construct, maintain and equip buildings and acquire sites therefor and to enlarge or remodel buildings and equip the same for agricultural, commercial, industrial and manufacturing facilities and to enter into lease-purchase agreements with any person, firm or corporation for said facilities.

"Section 2. Construction of facilities and lease-purchase agreements for facilities constructed for agricultural, commercial, industrial, natural resources, recreational development and manufacturing enterprises. Any municipality shall have power to issue revenue bonds, the proceeds of which shall be used only to purchase, construct, reconstruct, equip, maintain or repair buildings and to acquire sites therefor, and to enlarge or remodel said buildings and equip the same for agricultural, commercial, industrial, natural resources, recreational de-

velopment and manufacturing facilities with power to enter into lease-purchase agreements not to exceed 20 years, by ordinance with any person, firm or corporation for said facilities, said facilities to be constructed in any municipality or its environs without limitations as to distance, providing the governing body of said municipality declares that said facility, if in being, would promote the welfare of the municipality.

"Section 3. Conditions of agreement. Such agreements shall provide for contractual payments sufficient to amortize the cost of facilities to be constructed and equipment, plus the fair market value, on the date of the agreement, of the site, if it is necessary to purchase a site. Such agreements shall also provide for a reasonable rate of interest on the outstanding principal and reimburse the municipality for the cost of any other obligation assumed by it under the contract.

"Section 4. Obligations payable solely from contractual payments; bonds, requirements. Nothing in this act shall be so construed as to authorize or permit any municipality to make any contract or to incur any obligation of any kind or nature except such as shall be payable solely out of the contractual payments from such facilities. Such municipalities may issue bonds payable solely and only from the revenues derived from such facilities. Such bonds may be issued in such amounts as may be necessary to provide sufficient funds to pay all the costs of purchase or construction of such facility, including site, engineering and other expenses, together with interest. Bonds issued under the provisions of this act are declared to be negotiable instruments, shall be executed by the mayor and clerk of the municipality, and shall be sealed with the corporate seal of the municipality. The principal and interest of said bonds shall be payable solely and only from the special fund herein provided for such payments, and said bonds shall not in any respect be a general obligation of such municipality,

nor shall they be payable in any manner by taxation. All details pertaining to the issuance of such bonds and the terms and conditions thereof shall be determined by ordinance of the municipality.

"Section 5. Pledge of facility and earnings. The governing body of the municipality by ordinance may pledge the facility purchased or constructed and the net earnings therefrom to the payment of said bonds and the interest thereon, and provide that the net earnings thereof shall be set apart as a sinking fund for that purpose.

"Section 6. Amount of revenue bonds. In no case in which revenue bonds are issued, under and by virtue of this act, shall any revenue bonds be issued for an amount in excess of the actual cost of the facility, including the site therefor.

"Section 7. Revenue bonds, defined, recitals. Revenue bonds, as the term is used in this act, are defined to be bonds issued by any such municipality to be paid exclusively from the revenue produced by the property and facilities improved, constructed, reconstructed, repaired or otherwise improved by the use of the proceeds of said bonds.

"Section 8. Form of bonds. Such revenue bonds shall not be general obligations of the municipality. Such revenue bonds shall contain the following recitals, viz: Such bonds shall recite the authority under which such revenue bonds are issued, and that they are issued in conformity with the provisions, restrictions and limitations thereof, and that such bonds and the interest thereon are to be paid from the money and revenue received from the fees charged and rental received for the use of the property and facilities improved, constructed, reconstructed, repaired and otherwise improved by the proceeds, in whole or in part, of such revenue bonds when issued and sold."

Ordinance No. 307, being the one here involved, authorized the city to enter into a contract with Morgen requiring the city to purchase an indicated site in the city from Morgen, and to construct thereon a building suitable for the conduct of a described manufacturing operation and equip it for that purpose, and to issue bonds to finance such project. This facility the city was authorized to lease to Morgen for an initial term of 10 years with an option to purchase it or renew the lease. The rentals during the initial terms of the lease were to be sufficient in amount to amortize the revenue bonds in the principal sum of $85,000 issued to finance it, and to pay all expenses of operation and maintenance of the project, including insurance, paying agents fees, taxes and special assessments.

In supporting his claim of unconstitutionality plaintiff directs our attention to Art. XIII, Section 1 of our State Constitution. Among other things that section provides that for improving the economic facilities of South Dakota the state may engage in works of internal improvement, may own and conduct proper business enterprises, may loan or give credit to, or in aid of, any association or corporation organized for such purposes. Since our constitution contains no similar grant of power to municipalities he suggests that the legislature was without authority to enact Ch. 148, Laws of 1964.

Originally this section provided that neither the state, nor any county, township or municipality shall loan or give its credit in aid of an individual, association or corporation. Plaintiff argues that the elimination of counties, townships and municipalities from this provision discloses an intent and purpose to limit the grant of such powers to only the state. Ch. 233, Laws of 1915; Ch. 163, Laws of 1917; Ch. 139, Laws of 1935. In this connection it should be noted that the electors of this state decisively defeated the amendment of this section proposed in Ch. 127, Laws of 1933, which would have reinstated the section substantially as it was originally. In asserting this position he views the constitution as a source of legislative power rather than as a limitation thereof. That is not our rule.

■ The most recent statement of our rule appears in Kramar v. Bon Homme County, 83 S.D. 112, 155 N.W.2d 777:

"The constitution is not a grant but a limitation upon the lawmaking power of the state legislature and it may enact any law not expressly or inferentially prohibited by state and federal constitutions."

This has long been the law of this state. In re Watson, 17 S.D. 486, 97 N.W. 463; 2 Ann.Cas. 321; State ex rel. Longstaff v. Anderson, 33 S.D. 574, 146 N.W. 703; State ex rel. McMaster v. Reeves, 44 S.D. 612, 184 N.W. 1007; Peterson Oil Co. v. Frary, 46 S.D. 258, 192 N.W. 366; 264 U.S. 570, 44 S.Ct 333, 68 L.Ed. 854; State v. Board of Commissioners of Beadle County, 53 S.D. 609, 222 N.W. 583; Acker v. Adamson, 67 S.D. 341, 293 N.W. 83. Consequently, in determining whether an act is unconstitutional we search the state and federal constitutions for provisions which prohibit its enactment rather than for grants of such power. Except as limited by them the legislative power of our state legislature is unlimited.

■ Plaintiff contends that the expenditures authorized under Ch. 148, Laws of 1964 are not for a public purpose. In this he does not rely on any specific constitutional provision but urges an inherent constitutional limitation that public funds can be spent only for a public purpose. Spangler v. City of Mitchell, 35 S.D. 335, 152 N.W. 339. See also Art. X, Section 2 of our State Constitution. The declared purpose of the act is to promote, stimulate and develop the general economic welfare and prosperity of the state of South Dakota. Clearly this is a public purpose. Wheelon v. South Dakota Land Settlement Board, 43 S.D. 551, 181 N.W. 359, 14 A.L.R. 1145; Green v. Frazier, 44 N.D. 395, 176 N.W. 11, affirmed in 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878. Determining whether a statutory purpose is public or private is pretty much a matter of policy and wisdom for the legislature. In making such decision it is vested with a large discretion with which the courts should not interfere unless its ac-

tion is clearly evasive. Torigian v. Saunders, 77 S.D. 610, 97 N.W.2d 586.

■ ■ Of course while legislative declarations of an act's purposes are entitled to great weight they are not binding on the courts. However, we think the legislature could reasonably conclude that this act would serve the intended purposes. In argument we were advised that some 41 states have made provision for revenue bond financing for industrial development. The great weight of authority has upheld laws of this type under the public purpose doctrine. In State ex rel. Bowman v. Barczak, 34 Wis.2d 57, 148 N.W.2d 683, are listed decisions from 18 jurisdictions so holding and only 7 taking the contrary view. This seems to be the most recent compilation of cases in this field available to us. See also City of Gaylord v. Beckett, 378 Mich. 273, 144 N.W.2d 460.

■ That our legislature and the people of this state are committed to that view is evidenced by the establishment of our state Industrial Development and Expansion Agency, and its predecessor Commission, and the generous financial support afforded them for a period of about 20 years. Ch. 230, Laws of 1949; Ch. 279, Laws of 1961. The residents of our state and their legislatures have long been cognizant of the obvious and extreme imbalance of agriculture over industry in South Dakota, and of the urgent need to do something about it. The enactment here under assault is another effort to alleviate this condition. While there are some who question the wisdom of these legislative efforts that is not for us to decide. We are concerned only with the power of the legislature to adopt this act.

■ Our constitution in Art. X, Section 1 directs the legislature to restrict the power of municipal corporations to levy taxes and assessments, borrow money and contract debts, so as to prevent the abuse of such power. Plaintiff suggests that the act in question is violative of this provision. Since it provides that the bonds shall be payable solely and only from the revenues derived from such facilities and are not in any respect a general obligation of such municipalities, nor payable in any manner

by taxation, manifestly they do not constitute a municipal debt and the cited provision of our constitution is consequently not here involved. State College Development Ass'n v. Nissen, 66 S.D. 287, 281 N.W. 907; Mettet v. City of Yankton, 71 S.D. 435, 25 N.W.2d 460; Green v. City of Mt. Pleasant, 256 Iowa 1184, 131 N.W.2d 5; Village of Deming v. Hosdreg Co., 62 N.M. 18, 303 P.2d 920. Such bonds do not involve any taxes or assessments nor a debt of the city.

■ In this connection he refines his suggestion and proceeds to contend that at least that part of Ch. 148, Laws of 1964, which authorizes the issuance of revenue bonds for the purpose of maintaining the facility as distinguished from its construction, violates the quoted constitutional provision. We do not agree. Our views as set forth above dispose of that contention. State ex rel. Ferguson v. City of Pittsburg, 188 Kan. 612, 364 P.2d 71. The act gives the city this power.

■ Section 2 of the act provides that the facilities being acquired are to be constructed in any municipality or its environs without limitation as to the distance, providing the governing body of said municipality declares that said facility, if in being, would promote the welfare of the municipality. Plaintiff urges that this is an unlawful delegation because the funds involved could be spent at a location without limitation as to the distance of the facility from the municipality. In other words, he claims that no sufficient standard was laid down to control the action of the city. The same contention was rejected in State ex rel. Ferguson v. City of Pittsburg, supra, with the observation that such argument overlooks the ordinary meaning of the words "or its environs". We have held more imprecise terms to be adequate guidelines. Berdahl v. Gillis, 81 S.D. 436, 136 N.W.2d 633.

■ ■ Our state constitution in Art. III, Section 21, provides that "No law shall embrace more than one subject, which shall be expressed in its title." Plaintiff urges that the title to Ch. 148, Laws of 1964, violates this provision. His argument is that it is silent as to the promotion and advancement of natural resources and the recreational development authorized by the

act to accomplish its purposes and also as to the retirement of the bonds. The title to the act reads:

> "AN ACT Entitled, An Act relating to the sale of revenue bonds by municipalities and authorizing municipalities to purchase, construct, equip, maintain, repair, lease and sell under lease-purchase agreements, and acquire sites for agricultural, commercial, industrial and manufacturing facilities, said facilities to be financed solely from the´proceeds derived from the sale of said revenue bonds, and said revenue bonds to be payable solely from the rentals of such facilities."

Our constitutional requirement is concerned only with the subject of an act. Plaintiff makes no claim as to the subject. His complaint seems to be that the title is not a complete index. This is not required by our constitution. We are satisfied that the title to this act is neither misleading nor deceptive. Garrey v. Schnider, 78 S.D. 596, 105 N.W.2d 860; State ex rel. Ferguson v. City of Pittsburg, supra. Its title does not embrace more than one subject and that is adequately expressed therein.

■■ Ch. 148, Laws of 1964, does not prescribe a specific rate of interest that the bonds shall bear, it merely provides that the interest shall be at a reasonable rate. Nor does it fix a specific period for the maturity of the bonds. Plaintiff urges that the legislature's failure to express these conditions constitutes an unlawful delegation of legislative power. A similar contention in State v. Pittsburg, supra, was held to be without merit. As stated in the ordinance the rate of interest is specified by the successful bidder. In Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1, and elsewhere, we have recognized that the legislature having written broad policy into law and adopted understandable standards, may delegate to an administrative agency the power to perform quasi-legislative functions under the act. Under these circumstances the agency does not legislate, it is merely performing certain legislative duties in accordance with provisions of the law. Green v. Frazier, supra.

■ ■ In Section 5 the municipality is authorized to pledge the facility and the net earnings therefrom to the payment of the bonds and the interest thereon. The term "net earnings" is not further defined. Plaintiff complains of this. He asserts that because of this and an indefiniteness as to how the bonds are to be retired the act fails because of vagueness. This is without merit. A law may not be held invalid because of vagueness unless the uncertainty makes it impossible to execute the act or to ascertain the legislative intent. Berdahl v. Gillis, supra. He does not urge that the act in question is infected to that degree.

■ The parties agreed that the realization of the project would result in incidental benefits to Morgen and because the city was involved in the project the funds therefor would be obtained at a lower rate of interest than would be the case if the city were not involved. Plaintiff characterizes this as a subsidy to a private industry. This may well be the effect, but it does not destroy the public purpose of the act. Neither does it result in a taking of private property without due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States, or Section 2 of Art. VI of our Constitution. Eakin v. South Dakota State Cement Commission, 44 S.D. 268, 183 N.W. 651; Gripentrog v. City of Wahpeton, N.D., 126 N.W.2d 230; State ex rel. Ferguson v. City of Pittsburg, supra; nor violate the privilege and immunity clauses of those documents. Green v. City of Mt. Pleasant, supra.

■ The court found as a fact that there is no substantial unemployment in the City of Yankton or its environs, or other economic distress. It also found that the establishment of the contemplated project and the issuance of the bonds provided for in the ordinance will promote the general economic welfare and prosperity of the city and its people. It further found that the spending of the proceeds of the bond issue for said project will result in substantial economic benefit to the city of Yankton and its citizens, and promote the general economic welfare of the State of South Dakota. Plaintiff seems to contend that these findings are without support in the record. In this he is in

error because they conform substantially to the facts agreed upon by the parties in paragraph 3 of their stipulation.

 He also urges that in the absence of substantial unemployment or other economic distress the acquisition of the contemplated project can serve no public purpose. We are unable to accept this restricted view. As indicated above the promotion, stimulation and development of our general economic welfare and prosperity is clearly a public purpose. The numerous cases in this field overwhelmingly support that conclusion. While there may be an absence of substantial unemployment or other economic distress in the area involved, it is a matter of common knowledge that large numbers of the youth of this state as they complete their formal education, leave the state in search of employment elsewhere which is not available here. Our civic and governmental leaders regard this as one of our most pressing problems. It seems to us only reasonable to hold that any statutory scheme designed to retain some of them as residents of our state serves a public purpose.

 Every presumption is in favor of the validity and propriety of legislative action, and no statute should be held unconstitutional by any court unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt. State ex rel. Botkin v. Welsh, 61 S.D. 593, 251 N.W. 189; Kramar v. Bon Homme County, supra. In our view this act is not either expressly or inferentially prohibited by any provision of our state or the federal constitution. Consequently, we hold it to be a valid enactment.

We move now to the various attacks made by the plaintiff on Ordinance No. 307 and proceedings had thereunder. Ch. 148, Laws of 1964, authorizes the city by ordinance to enter into lease purchase agreements not to exceed 20 years. The ordinance in Section 2.1 approved the lease and purchase agreement between the city and Morgen which, in addition to the initial term of 10 years, permits Morgen to renew the lease for two successive additional terms of 10 years each. His complaint is that this makes possible a term of 30 years and renders the

lease invalid. We do not regard this question as being for determination in this proceeding. Any views that we may indicate on it at this time would be no more than advisory.

 Sales of real property by municipalities generally are governed by the provisions of SDC Ch. 45.27. It is urged that the provisions of Ch. 148, Laws of 1964, concerning the sale of facilities provided thereunder does not conform to these general requirements. Our constitution places no restrictions on the manner in which municipal property shall be sold. Consequently, it was within the power of the legislature to provide a different manner in which these facilities were to be disposed of. The terms of a statute relating to a particular subject will prevail over the general terms of another statute. In re Otting's Estate, 57 S.D. 420, 233 N.W. 274. Likewise, the legislature was at liberty to provide for the leasing of these facilities in such manner as it deemed advisable.

 The contract that the city entered into with Morgen concerning the contemplated facility provided that the city should award a construction contract on the basis of the plans and specifications if the contract cost did not exceed by more than 5% the estimated cost. It further stipulated that it could award such contract without necessity of public bidding. Plaintiff argues that this violates the provisions of SDC 1960 Supp. 45.1501, governing contracts for local improvements. Under our holding in Robbins v. Rapid City, 71 S.D. 171, 23 N.W.2d 144, the facilities involved are not local improvements as contemplated by that section. See also Massey v. City of Franklin, Ky., 384 S.W.2d 505.

 It is also asserted that the described procedure violates SDC 1960 Supp. Ch. 65.07 as amended by Ch. 227, Laws of 1964 relative to competitive bidding on contracts for public building or for public works. As we read this chapter it should not be applied when the facility in question is being acquired for use of private industry. Gregory v. City of Lewisport, Ky., 369 S.W.2d 133. Statutes requiring competitive bidding on public improvements are intended to avoid undue and

excessive costs which might otherwise be imposed on the taxpayers. Wring v. City of Jefferson, Mo., 413 S.W.2d 292. In view of this it is ordinarily held that such statutes are applicable only where the city itself assumes the obligation or indebtedness. That is not the case here.

■ Ordinance No. 307 as approved and published refers to the agreement of lease and purchase and the contract between the city and Morgen and states that they are on file in the office of the city auditor. The ordinance was published as required by SDC 1960 Supp. 45.1003, but these exhibits were not. Because of this their validity is questioned. The trial court held this to be without merit. We concur. 5 McQuillin, Municipal Corporations, 3rd Ed., § 16.80; Dallasta v. Department of Highways of State of Colorado, 153 Colo. 519, 387 P.2d 25; Uhls v. State ex rel. City of Cheyenne, Wyo., 429 P.2d 74—a revenue bond case in which similar documents were referred to in the ordinance but not published. The public was advised of the nature of Ordinance No. 307 and the exhibits referred to therein were available for examination. The purpose of publication was fulfilled.

Affirmed.

All the Judges concur.

HERSRUD, Circuit Judge, sitting for ROBERTS, J., disqualified.

BIEGELMEIER, Judge (concurring).

My concurrence is premised on the basis the bonds are payable under the statute and ordinance solely from rentals collected from, and payable to the city by, a private corporation pursuant to a written lease in the usually accepted practice and in the normal operation of business under our capitalistic system and do not rely directly or indirectly on the taxing power, tax or other municipal sources. It is not therefore an "evasive" device proscribed by Torigian v. Saunders cited in the opinion.