STATE ex rel. MALONEY, Plaintiff v. WELLS, Defendant

(112 N.W.2d 601)

(File No. 9959. Opinion filed December 29, 1961)

**A. C. Miller,** Atty. Gen., **Joseph H. Bottum, III,** Asst. Atty. Gen., for Plaintiff.

**Maynes & Myers,** Aberdeen, for Defendant.

MANSON, Circuit Judge.

■ Nominally entitled in quo warranto, the subsequent pleadings and issues on both sides make it abundantly clear that this original proceeding is in the nature of mandamus. The legislature has conferred upon this court jurisdiction of such proceeding to determine right to an office. SDC 1960 Supp. 37.4501. The jurisdiction of this court in a proceeding in the nature of mandamus is not limited or restricted by the name given in the pleadings to the proceedings.

On June 15, 1960, the respondent, Goldie Wells, was duly and legally appointed to the office of Employment Security Commissioner for a term of four years, to commence July 1, 1960. This appointment was made under the provisions of SDC 1960 Supp. 17.0803-3 which reads as follows:

> "Commissioner; office created; appointment; tenure; removal; salary; bond; premium paid from fund. There is hereby created the office, Employment Security Commission of South Dakota, who shall be appointed by the Governor, and who, during his term of office, shall not engage in any other business, vocation, or employment, or serve as an officer or committee member of any political party organization. The said Commissioner shall hold office for a term of four years, except that, if appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed, he shall be appointed for the remainder of such term. The Governor may, at any time, after notice and hearing, remove the Commissioner for gross neglect of duty, malfeasance, misfeasance or nonfeasance in office. The salary of said Commissioner shall be eight thousand dollars per year which salary shall take effect on July first and shall be paid from the employment security administration fund. The Commissioner shall, before assuming the duties of his office, take and subscribe and

file with the Secretary of State the constitutional oath of office, and execute a bond with sufficient sureties in the penal sum of ten thousand dollars, conditioned that he will faithfully perform the duties of his office, which bond shall run to the state of South Dakota and shall be subject to the approval of the Governor of South Dakota, and when approved, shall be filed with the Secretary of State. The premium upon such bond shall be paid out of the employment security fund."

Respondent thereupon qualified for the office and entered upon the duties thereof and maintains in this proceeding her right to continue therein.

Thereafter and during the legislative session of 1961, Chapter 103 of the Session Laws of 1961 was enacted:

"Chapter 103. Amending Law Relating to Qualifications and Salary of Employment Security Commissioner. AN ACT Entitled, An Act to amend section 17.0803-3 of the 1960 Supplement to the South Dakota Code of 1939, relating to the appointment, qualifications, salary and tenure of the Commissioner and Counsel under the Employment Security Law.

Be It Enacted by the Legislature of the State of South Dakota:

"Section 1. That 1960 SDC Supp. 17.0803-3 be, and the same is hereby, amended to read as follows:

"17.0803-3 Commissioner and Counsel; office created; qualifications; appointment; tenure; removal; salary; bond; premium paid from fund. There is hereby created the office, Employment Security Commissioner and Counsel of South Dakota, who shall be a member of the South Dakota State Bar with at least five years of active legal practice, and who, in addition to all other duties,

shall perform legal services for the Employment Security Department, who shall be appointed by the Governor, and who, during his term of office, shall not engage in any business, vocation or employment, or serve as an officer or committee member of any political party organization. The said Commissioner and Counsel shall hold office for a term of four years, except that, if appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed, he shall be appointed for the remainder of such term. The Governor may, at any time after thirty days notice and hearing, remove the Commissioner and Counsel for gross neglect of duty, mal-feasance, mis-feasance, or non-feasance in office. The salary of the Commissioner and Counsel shall be ten thousand dollars per year which salary shall take effect on the effective date of this Act and shall be paid from the employment security administration fund. The Commissioner and Counsel shall, before assuming the duties of his office, take and subscribe and file with the Secretary of State the constitutional oath of office and execute a bond with sufficient sureties in the penal sum of ten thousand dollars that he will faithfully perform the duties of his office, which bond shall run to the State of South Dakota and shall be subject to the approval of the Governor of South Dakota, and when approved shall be filed with the Secretary of State. The premium upon such bond shall be paid out of the employment security fund."

The legislative history of this law indicates that at one point in consideration of the bill, a motion to amend to include a clause abolishing the office of Commissioner, as it existed under SDC 1960 Supp. 17.0803-3 was defeated. The bill eventually passed both houses, with less than a two-thirds majority in the Senate and became law.

Pursuant to this enactment, the relator, P. J. Maloney, a duly licensed and practicing attorney of more than five years active practice, was duly and legally appointed to the office of Employment Security Commissioner and Counsel for a period of four years, from July 1, 1961. Relator similarly qualified for this office and entered upon the duties thereof, insofar as he was able, and maintains his right to continue therein. The uncontroverted pleadings allege that relator has been barred from the offices of the Employment Security Department in Aberdeen, South Dakota, by respondent who thereby and otherwise asserts her right to hold and exercise the office to which she was appointed. It further appears that the affairs of the Employment Security Department are deteriorating as a consequence of the controversy and that the functions of the department are thus impaired.

Respondent's position in respect to the proceeding herein, that she is entitled to the office under and by virtue of SDC 1960 Supp. 17.0803-3, the law under which she was appointed as Commissioner. She bases this position upon four firm contentions, as follows:

a) That the office which she holds was not abolished by Chapter 103 of the Session Laws of 1961 and that her said office continues to exist under SDC 1960 Supp. 17.-0803-3;

b) That Chapter 103 is unconstitutional and void because the title to said act is faulty and in violation of Article III, Section 21 of the Constitution of South Dakota;

c) That said Chapter 103 is unconstitutional and void in that it undertakes to direct the Commissioner and Counsel named therein to perform legal services for the Department and thereby invades the constitutional duties and powers of the Attorney General of South Dakota, and,

d) That said Chapter 103 is unconstitutional and void for the reason that it is an appropriation measure

and that it failed to receive a two-thirds vote of the members of the body elect in accordance with Article XII, Section 2 of the Constitution of the State of South Dakota.

Respondent's first claim of right does not, as must be noted, traverse the right of relator to hold office, but simply asserts her right thereto. Relator denies her claim, asserting that Chapter 103 abolishes the office she claims, creating a new office to which he asserts his claim. In this wise we note that, while Chapter 103 does not contain any specific abolition of the office as it previously existed, it does amount to a verbatim restatement of the earlier law, altered only in respect of the title, qualifications, salary and removal procedures pertaining to the head of the Employment Security Department.

This would appear to bring into play the rule announced in Halverson v. Glass, 36 S.D. 225, 154 N.W. 444, 445, where the Court has held that an enactment was repealed by "necessary implication" where the intendment of a later law was to cover the whole subject matter of the previous law. State v. Devericks, 77 S.D. 509, 94 N.W. 2d 348, 350, further refines the rule to apply where only portions of a law are changed by revision or amendment, saying:

> "In accordance with the general rule of statutory construction 'Where a section or part of a statute is amended, it is not to be considered as repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted and the new provisions are to be considered as having been enacted at the time of the amendment.' "

The right of the legislature to rename, provide new qualifications for, or increase salary to, an office where not restricted by constitutional considerations, seems perfectly clear. It is, in our opinion, equally clear that the prime intention of the legislature in enacting

Chapter 103, was to require stricter professional quali-
fications of the aspirant for the office mentioned.

■ The only reasonable effect to be given to the action
of the legislature is that the office which was held by respon-
dent literally had no legal existence after the date when Chap-
ter 103 became law, being superseded by an office whose qual-
ifications precluded her continuance therein. We hold that the
act of the 1961 legislature resulted in a virtual abolition
of the office which was held by respondent and that the
only office which is now by law entitled to exercise super-
vision of the Employment Security Department is that
named, qualified and compensated pursuant to Chapter
103, Laws of 1961. We have given thought to the possible
inferences to be drawn from the failure of the so-called
"abolition amendment" to Chapter 103, but have con-
cluded that it is more reasonable to infer that the legis-
lature, pursuing the clear intendments of their action,
deemed specific abolition unnecessary, than that they intend-
ed to create two officers to perform substantially the
same function, with the predictable results we have here
noted.

■ Respondent's next contention—that Chapter 103
is unconstitutional because the title does not comply with
Article III, Section 21 of the Constitution of South Dakota—
appears to be narrowed to the view that the act is un-
constitutional because the title nowhere indicates that the
"Commissioner and Counsel" named in the title is to be
required to perform legal services as he is, in fact, en-
joined by the body of the act.

The purpose of this constitutional provision, which
states that no law shall embrace more than one subject,
which shall be expressed in its title, has been defined on
numerous occasions by this Court. We have said that it is
intended to protect the legislature and communities affected
by law from "surprise and imposition", (Lemmon Inde-
pendent Sch. Dist. No. 1 v. Rowbotham, 48 S.D. 641, 205
N.W. 706, 707) to give such information to the legislature

as will enable them to determine the nature and character of the act under consideration, (Pierson v. Minnehaha County, 28 S.D. 534, 134 N.W. 212, 217, 38 L.R.A.,N.S., 261) and to "fairly indicate * * * subject by the title", (State v. Becker, 3 S.D. 29, 51 N.W. 1018, 1021). Application of this provision must, of course, be consonant with the well-recognized rule which requires that the changed law must be construed liberally and with the end in view that an act should be held unconstitutional only when its conflict with the Constitution is plain and manifest. Wheelon v. South Dakota Land Settlement Board, 43 S.D. 551, 181 N.W. 359, 14 A.L.R. 1145. In the instant case, we are of the opinion that the inclusion of the word "Counsel", in the title to Chapter 103, merits more than passing notice. This word, in the context of the title, applied as it is to a person or official, can only be taken to mean "One who gives advice; esp. in legal matters" as defined in Webster's New International Dictionary, and we believe this to be the usual and ordinary, if not the only, sense of the word. This established, it is clear that the specification of legal service clearly imports the devolution of some form of legal duties upon the officer so named, and comparison of the revisory act with the earlier enactment, can lead to no other conclusion. We, therefore, find for relator on this issue.

■ We next approach the third contention put forward by respondent, namely, that Chapter 103 is unconstitutional because it is an attempt to change and diminish the constitutional powers of the Attorney General. This position, in extenso, appears to be that the Attorney General is, by common law and the Constitution, the "head of the legal department of this state", (Dillon, J. dissent, Johnson v. Jones, 49 S.D. 549, 207 N.W. 550) that his authority and powers are plenary in the legal field, although unexpressed by statute, and that the assignment of any legal functions to officers who are not members of the Attorney General's staff are ipso facto unconstitutional as an invasion of the powers of the Attorney General.

We here observe that the only "prescribed" powers of the Attorney General in respect of the Employment Security Department are to sue civilly for employer defaults (SDC 1960 Supp. 17.0825) and, upon request, to appear for the Commissioner (now Commissioner and Counsel) in appeals to circuit court (SDC 1960 Supp. 17.0838) in matters involving benefit claims, as an alternative to representation of the Commissioner by an attorney in the employ of the Department under SDC 1960 Supp. 17.0805.

The general rule of construction in instances such as this is most currently and perhaps most comprehensively stated in Matthews v. Linn, 78 S.D. 203, 99 N.W.2d 885, 887, as follows:

> "It is axiomatic that every presumption favors the validity of legislative action and that no statute should be held unconstitutional by a court unless its infringement of organic restrictions is so plain and palpable as to admit of no reasonable doubt. * * * it is also a cardinal rule that whenever, within the bounds of reasonable and legitimate construction, an act of the legislature can be so construed and applied as to avoid conflict with the constitution, such construction should be adopted."

The construction urged upon us by respondent would admit of no area whatsoever within which a duly qualified state official or employee could render any form of legal services within his own department, without impinging upon the powers of the Attorney General and the conclusion which we are asked to draw thereupon is that any legislation which purports to grant authority to any such official or employee to do so is necessarily an invasion and denigration of the powers of the Attorney General. The Attorney General does not concur in this view, nor do we. We believe, as a practical matter, that an area of permissive routine legal activity exists in a case such as this and that, in extension of the rule in Matthews, we are bound to presume, in accordance with law, that

the appointed officer would so conduct himself as not to venture beyond this area. We are supported in this conclusion by the words of Judge Campbell who, in Johnson v. Jones, 48 S.D. 397, 204 N.W. 897, a much stronger case for respondent's view than the present, says:

> "Viewing all said sections together, we believe the most liberal construction that could be placed upon the authority granted by section 5 of the original act 'to employ attorneys' would be to hold the board authorized to employ attorneys for mere routine matters requiring the services of an attorney, but not requiring the rendering of legal advice or opinions upon points of law, or matters of legal right or policy of the board, and we think that any such attorneys so employed would be under the supervision, control, and direction of the Attorney General as general legal adviser of the board * * *."

It cannot, then, be said to follow that the passage of this act creates an unconstitutional prescription of powers by necessary implication and we construe the act as valid, observing that we need apprehend no more than that the legal officer here constituted will exercise the character of function in the manner delineated by Judge Campbell, i. e., "under the supervision, control, and direction of the Attorney General" and that such exercise could not be considered inimical to the constitutional powers of the Attorney General. For similar holdings in other states see Annotation 137 A.L.R. 820.

■ As for respondent's fourth and final contention, it is at once clear that Ch. 103 was passed with less than the 2/3 majority for which respondent contends. It is less clear how this chapter can be held to be an appropriations measure. The act prescribes payment to be made, not from the general fund, but from the Employment Security Administration Fund. Respondent does not suggest that there is not sufficient money in this fund to pay the salary of relator, nor is it anywhere shown that the pay-

ment of the salary would impose a liability to pay which would, in any way, draw upon the general revenue of the State of South Dakota.

For aught that appears in the record, such payments would be made entirely from funds received from an agency of the federal government and derived solely from federal appropriations. In such case, the provisions of Article XII, Section 2 of our Constitution would be inapplicable, since such funds are not state revenue, derived from state taxation. McArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428, 431; State ex rel. State Employees' Retirement Board v. Yelle, 31 Wash.2d 87, 195 P.2d 646, 201 P.2d 172, 181; Tatum v. Wheeless, 180 Miss. 800, 178 So. 95, 102; Gillum v. Johnson, 7 Cal.2d 744, 62 P.2d 1037, 1043, 63 P.2d 810, 108 A.L.R. 595.

This notwithstanding, if it be respondent's contention that the prospect of the inclusion of state moneys would imbue the receiving fund with a "public" character, in the sense that the Administration Fund would involve a charge upon the general revenues of the state, respondent must again fail. We quote from SDC 1960 Supp. 17.0817.

"There is hereby created in the State Treasury a special fund to be known as the employment security administration fund. Moneys which are deposited or paid into this fund shall be continuously available to the Unemployment Compensation Commission for expenditure in accordance with the provisions of this chapter, and shall not lapse at any time or be transferred to any other fund. All moneys in this fund which are received from the federal government or any agency thereof or which are appropriated by this state for the purposes described in section 17.0813 of this chapter shall be expended solely for the purposes and in the amounts found necessary by the Social Security Board for the

proper and efficient administration of this chapter."

We are of the opinion that SDC 1960 Supp. 17.0817 establishes a continuing appropriation for a definite purpose and that the challenged provisions of Chapter 103 constitute nothing more than a direction for the administrative payment of the salary of a departmental official from the funds of that department in the hands of the state treasurer, and so is not governed by the constitutional provisions cited. Cf. Gillum v. Johnson, supra, and Unemployment Compensation Commission v. Renner, 59 Wyo. 437, 143 P.2d 181, 189.

Judgment for plaintiff.

ROBERTS, RENTTO and HANSON, JJ., concur.

BIEGELMEIER, J., dissents.

MANSON, Circuit Judge, sitting for SMITH, P.J., disqualified.

BIEGELMEIER, J. (dissenting). In 1889 the people of this state adopted a Constitution which in Art. IV, Sec. 12, provided for one Attorney General. That he was and is the legal advisor for all state officers, departments and commissions has been both asserted and maintained since its adoption. In 1921 this court said:

> "The Attorney General is a constitutional officer, the title designates him as the attorney for the state, and his duties, independent of the statute, are those of a law officer. This section of the Code in its specific enumeration of the functions of his office, recognizes the fact that the scope of his duties does not extend beyond law matters."

State ex rel. McMaster v. Reeves, 44 S.D. 612, 621, 184 N.W. 1007, 1009. This statement and others in that opinion, compel the conclusion that his duties are those embraced within "the professional learning of a lawyer", words used therein. On March 26, 1925, Buell F. Jones, then At-

torney General, issued an opinion disapproving payment of a voucher to Julius H. Johnson as Assistant Counsel for the Rural Credit Board, wherein he said as to several acts of the legislature purporting to give authority to certain boards to employ legal counsel "I believe that these enactments should not be construed to mean that such departments may employ legal counsel without the consent and approval of the Attorney General. Any such interpretation of these legislative enactments would render such acts unconstitutional and void. * * * In my opinion, therefore, the employment * * * is in violation of the constitutional provision of this state which creates the office of Attorney General * * *". 1926 A.G.R. 269. In his Nov. 1, 1926 Letter of Transmittal to Governor Carl Gunderson he said: "The Attorney General is the legal advisor of all departments, officers, boards and commissions of the State."

On August 12, 1925, this court announced the decision in a mandamus action resulting from the position taken by the Attorney General on the Rural Credit Board employment of Johnson. Johnson v. Jones, 48 S.D. 397, 204 N.W. 897. Section 15 of the original Rural Credit Act stated the Attorney General was the general legal advisor of the board and its officers; Section 21 provided in case of foreclosure it was the duty of the Attorney General to render all services needed in connection therewith. In 1919 an amended section authorized the board to "employ, by and with the approval of the governor, such assistants * * * attorneys and other employees as it may deem necessary to conduct its business" and gave it further authority to fix their salaries and define their duties. [Laws 1919, c. 304]. This court speaking through Judge Campbell said:

> "* * * we are of the opinion that said board had no authority to create an independent legal department, or to employ any 'assistant counsel,' or to seek its legal advice and opinions from any source other than the Attorney General. Viewing

all said sections together, we believe the most liberal construction that could be placed upon the authority granted by section 5 of the original act 'to employ attorneys' would be to hold the board authorized to employ attorneys for mere routine matters requiring the services of an attorney, but not requiring the rendering of legal advice or opinions upon points of law, or matters of legal right or policy of the board, and we think that any such attorneys so employed would be under the supervision, control, and direction of the Attorney General as general legal adviser of the board, and therefore, as a practical matter to promote harmony and efficiency, and avoid friction, the wisdom of securing his approval before making even such appointment is obvious, whether or not the statute expressly requires it.

'That the Attorney General is the general legal adviser of such board has been recognized by this court in the case of Hughes County v. Henry, [48 S.D. 98,] 202 N.W. 286, at page 289. If the Attorney General should be derelict in the performance of such duties, there is a proper remedy therefor.

"The briefs submitted by respective counsel on this proceeding have argued at some length the question of whether the statute, if in fact it authorized the appointment here attempted to be made, would be unconstitutional; it being the contention of the Attorney General that under the Constitution he is the chief law officer of the state and as such the legal adviser of the officers and boards thereof, and that the Legislature cannot constitutionally authorize the employment of attorneys for state officers or boards without the approval of the Attorney General."

The court thought the constitutional question was "not involved".

On March 5, 1926, this court again had before it a mandamus action to require payment to this same attorney. Johnson v. Jones, 49 S.D. 549, 207 N.W. 550. He alleged he was employed as "attorney and assistant to the rural credit board", which had a "very large amount of legal business requiring the services of an attorney, not only in matters of litigation pending, but also in the routine matters requiring the assistance and service of said attorney". It can be plainly seen that Johnson, undaunted by failure in his first try, placed himself within the confines of handling "routine matters" referred to in Judge Campbell's opinion. He claimed that under subdivision (1) of section 3 of chapter 266, Laws of 1925, authorized the Rural Credit Board to employ him, as it gave the board power to employ legal counsel. Defendant contended this violated the constitution for two reasons in that the title was defective and it was an attempt to change and diminish the duties and powers of the Attorney General. This court said:

> "There is nothing in the title to chapter 266 to indicate or give notice that the law contains anything that changes, or attempts to change or affect, the powers or duties of the Attorney General, and for that reason the provisions of subdivision (1) are invalid, and it is not necessary to give consideration to the second proposition." 49 S.D. 549, 551, 207 N.W. 550.

This statement may be subject to some scrutiny for in order to declare that the act changed or attempted to change the powers or duties of the Attorney General (and thus be invalid) it was necessary to decide that these powers and duties, including "routine matters" belonged to the Attorney General. In any event this court held employment of legal counsel invalid even though it be for "routine matters". The legislature then, by enacting Ch. 187, Laws of 1927, agreed with the Attorney General and this court that legal advice to and legal counsel for the various officers, boards and commissions of the state,

was within the control of the Attorney General and provided that the appointment of attorneys be made by the Attorney General, with the approval of the Board, and that they be Assistant Attorneys General. Attorneys for all boards and commissions have been so carried and listed ever since.

On February 5, 1938, a different Attorney General wrote an opinion which reviewed and adhered to the principles recognized by this and other courts. 1938 A.G.R. 112. Coincidentally that opinion related to the power to appoint an attorney for the Unemployment Compensation Commission the same department referred to in the present litigation. See generally SDC 17.08. This opinion cited and quoted from Ex parte Corliss, 16 N.D. 470, 114 N.W. 962, 976. The North Dakota legislature passed a statute authorizing the appointment of a commissioner, granting him powers of a state's attorney limited to enforcement of laws against the manufacture and sale of intoxicating liquors. That act, as the one now before this court, required the commissioner to be an attorney and his appointment to be made by the governor. The North Dakota Supreme Court held the act as unconstitutional and void, even with another constitutional provision authorizing the legislature to prescribe regulations for the enforcement of the prohibition law, saying "To say that under the power to prescribe regulations the legislative assembly may create new offices in contravention of the whole scheme of government provided for by other provisions of the Constitution is, we think, doing unwarranted violence to the obvious intent of the framers of that instrument". An attempt to partially quote from the extensive opinion by Justice Fisk may lose its continuity, yet having in mind that Art. IV, Sec. 13 of our Constitution provides the powers and duties of the "attorney general shall be as prescribed by law", the following extracts from the opinion are applicable here.

"* * * it is argued that under the power to prescribe such duties the legislative assembly may

take them away, or a portion thereof, and confer them upon other officers not elected by the people, just as is attempted to be done by the act in question. Such argument, carried to its logical and inevitable result, would lead to the monstrous doctrine that the Constitution means nothing, and, notwithstanding its plain provisions, the legislative assembly may provide that the duties pertaining to all these offices shall be discharged by officers appointed in some manner prescribed by them. The act in question does not purport to prescribe the duties of these constitutional officers, but it attempts to vest in other persons not elected the power to perform such duties, and to this extent supplant these constitutional officers. Such legislation, in our opinion, cannot be sustained. It strikes a blow at the very foundation principles of our form of government. * * *

. "If the offices mentioned in section 173, which includes those of state's attorney and sheriff, 'are imbedded in the Constitution,' it inevitably follows that they cannot be stripped by the legislature of the important duties inherently connected therewith, for if this can be done, then these offices were 'imbedded in the Constitution' for no purpose. We do not deny the power of the Legislature to prescribe duties for these officers, which power carries with it by implication the right to change such duties from time to time as the public welfare may demand; but we deny its power to strip such offices, even temporarily, of a portion of their inherent functions and transfer them to officers appointed by central authority. This, as we view it, is a plain violation of the Constitution, and is subversive of the obvious intent of its framers to reserve to the people * * * to perform other functions of government by them so long performed and so well understood. * * * it is competent for the legis-

lative assembly to provide by law for removals in case of malfeasance or misfeasance in office, and to provide a method of filling such vacancies. But it is an entirely different proposition to say that the legislative assembly may go further and create a new office to be filled by central authority, and transfer to such appointive officer the duties essentially and constitutionally belonging to the county office."

The court said that if the legislature could create new offices of enforcement sheriffs or enforcement state's attorneys, then

"* * * why has it not the power to provide for the appointment of a special enforcement Governor, or a special enforcement Attorney General, or a special enforcement court? The Governor, Attorney General, and the judges are no more constitutional officers than are state's attorneys and sheriffs. It seems too obvious for discussion that the framers of the Constitution, in providing for the election of these officers by the people, thereby reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided. The naming of these officers amounted to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions. If this is not true, then of what avail are the provisions of the Constitution above referred to? If these constitutional offices can be stripped of a portion of the inherent functions thereof, they can be stripped of all such functions, and the same can be vested in newly created appointive officers, and the will of the framers of the Constitution thereby thwarted."

That such is not a speculative situation is shown from the quotation from a Wisconsin case where an act creating

a comptroller whose duty was to audit accounts after the Secretary of State (made exofficio Auditor under the Constitution) had done so. That court wrote:

> "'The result is that we have two auditors instead of one * * * the functions of that officer cannot, in whole or in part, be transferred to, or be exercised * * * by, any other person. * * A constitution * * * (is) designed to separate the powers of government and to define their extent and limit their exercise by the several departments * * *. Every positive delegation of power to one officer or department implies a negation of its exercise by any other officer, department or person. If it did not, the whole constitutional fabric might be undermined and destroyed'".

Referring to a New York decision the question "is not whether the Legislature can abolish, but whether it can retain, those powers and duties (of a sheriff), and give them to an officer not elected". Continuing, the North Dakota court opinion said:

> "The foregoing opinion fully sustains what we have heretofore said to the effect that, the Constitution having named certain officers, the functions essentially and inherently connected with such offices must be discharged by these constitutional officers and none others."

The following statements are in accord:

> "The Attorney General is vested with many powers and duties, and these appertain to his office under the Constitution. He cannot be deprived of these common-law functions by the Legislature * * *". People ex rel. v. McCullough, 254 Ill. 9, 98 N.E. 156, 159, Ann.Cas. 1913B 995.

> "* * * the Attorney General * * * is the sole official advisor of the executive officers, and of all boards, commissions, and departments of the state

government, and it is his duty to conduct the law business of the state, both in and out of courts. The appropriation to the insurance superintendent for legal services and for traveling expenses of attorneys * * * is unconstitutional and void". Fergus v. Russel, 270 Ill. 304, 110 N.E. 130, 145.

"It often has been recognized that the powers of the Attorney General are not circumscribed by any statute, but that he is clothed with certain common-law faculties appurtenant to the office". Commonwealth v. Kozlowsky, 238 Mass. 379, 131 N.E. 207, 210.

An analysis of the Employment Security Law reveals some situations not easily reconcilable as to plaintiff relator's employment. Apparently the agency to administer the law is the Employment Security Department, which means the Commission or Unemployment Compensation Commission, which in turn means the Employment Security Commissioner. SDC 1960 Supp. 17.0801, SDC 1960 Supp. 17.0803-2. The result of the interplay of words and statutes is that there is an Employment Security Commissioner. He is the Commission, Department and Commissioner. He administers the chapter, has power to adopt rules, employ persons, make expenditures, reports, investigations and take such other action as he deems advisable; he determines his own organization and methods of procedure. SDC 1960 Supp. 17.0807. He may also appoint and fix the compensation of, prescribe the duties and powers of such officers, accountants, attorneys, experts and other persons as may be necessary in the performance of his duties. SDC 1960 Supp. 17.0805 as amended by Ch. 104, Laws of 1961. These and other sections seem to give him power without end; at least the statutes so read. SDC 1960 Supp. 17.0835. Fortunately, judicial review is allowed but only on disputed claims. Within the Department, which is the Commissioner, he is monarch of all he surveys. As the majority points out, civil actions may be brought in the name of the state for amounts due (SDC 1960 Supp.

17.0825) but in judicial actions involving his decisions he may either call upon the Attorney General or his own salaried employee attorney. In this maze SDC 1960 Supp. 17.0803-3, which created the office of Employment Security Commission, was amended. The words "and Counsel" were added to the officer's title. He is required to be a member of the South Dakota State Bar with at least five years active legal practice, "who, in addition to all other duties, shall perform legal services for the Employment Security Department." He therefore is to advise himself, conduct which this court has not especially favored. Kirby v. First National Bank, 64 S.D. 404, 266 N.W. 883. The duties are not specified to be routine duties. It must be assumed that the Legislature would not idly use the term legal services or add the requirement that he be a member of the Bar of five years active legal practice unless they had a meaning. Legal services could not be performed for compensation in the state without such membership nor can we assume the state expected to pay for services not to be fairly rendered. From this wording the conclusion is they required all the legal services and advice from a lawyer necessary except in the case of a suit by the state and would not have passed part of the statute as to Bar membership without the legal service requirement. In doing so, the statute unconstitutionally attempts to diminish the duties of the Attorney General and should not be sustained. Even though the Attorney General has now taken a view contrary to his predecessors and consented to this partial encroachment in the body of the act, this court should not approve it. Nothing in the title indicates this change of duties and under the second Johnson opinion the act itself is invalid. The majority opinion may well rise up to trouble the court if a future legislature pass an act creating an office, to be filled by it, to perform routine duties of a governor or other constitutional officer. For the above reasons I dissent.